892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerry Wayne STRANGE, Defendant-Appellant.
 No. 89-5826.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1989.
 
 E.D.Ky.
 AFFIRMED.
 On Appeal From the United States District Court for the Eastern District of Kentucky.
 Before KEITH, BOYCE F. MARTIN, Jr. and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Jerry Strange, entered a plea of guilty to a one-count indictment charging him with attempting to transport and receive explosives with the knowledge and intent that they would be used to kill, injure, and intimidate an individual named David Standish, in violation of 18 U.S.C. § 844(d) and § 373(a). The guideline range for this offense was 27 to 33 months; however, the court made an upward departure and sentenced Strange to 66 months. On appeal, Strange asserts that "there is no substantial evidence to warrant such an upward departure." (Appellant's Brief at p. 1). We disagree and will affirm.
 
 I.
 
 2
 The defendant has a long history of mental illness and has been diagnosed as borderline schizophrenic with delusional fantasies. The events giving rise to this prosecution grow out of the defendant's attempt to hire someone to kill a person whom Strange perceived to be a rival for the affections of a woman about whom Strange fantasized. Strange also wanted this woman to be kidnapped and brought to him in the woods. Fortunately for everyone involved, the person Strange attempted to hire was an undercover agent.
 
 
 3
 After defendant's arrest, two psychiatric evaluations were performed and the court had the benefit of these reports. The court was aware that Strange had a history of bizarre behavior, including self-mutilation, as well as serious medical and emotional problems. Long-term psychotherapy was recommended by both professionals who examined Strange. Although Strange had no lengthy criminal record, he did have a juvenile offense involving taking a weapon to school pursuant to a fantasy involving holding the teacher and class hostage. In departing from the guidelines, the court was primarily influenced by the defendant's need for long-term psychotherapy and the fact that the defendant's past criminal history did not truly reflect the seriousness of his conduct and the danger he posed to society as well as himself.
 
 II.
 
 4
 In United States v. Joan, 883 F.2d 491 (6th Cir.1989), we set forth the standards to be applied in reviewing sentences that involved an upward departure from the guidelines. We adopted the three-step test set forth by the First Circuit in United States v. Diaz-Villafane, 874 F.2d 43 (1st Cir.), cert. denied, 110 S.Ct. 177 (1989). In Diaz-Villafane, the court stated:
 
 
 5
 First, we assay the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.
 
 
 6
 Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error. See 18 U.S.C. § 3742(d).
 
 
 7
 Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness. 18 U.S.C. § 3742(e)(2)....
 
 
 8
 874 F.2d at 49.
 
 
 9
 When the Joan test is applied to the facts here, we have little trouble concluding that the district court should be upheld in its decision to make an upward departure. First, we believe this case is sufficiently unusual to warrant a departure. We have a combination of mental illness and a prior criminal history that leads strongly to the conclusion that the defendant is likely to continue to engage in conduct that has the very real potential for death or serious injuries to others. The significance of the criminal history is not that it exists, but that it indicates the defendant is following a pattern of fantasizing violent events and then proceeding to carry them out. This arguably makes the criminal history more of a predictor of future conduct than is the norm.
 
 
 10
 Second, we have no doubt that the facts surrounding this crime are as indicated by the district court because they are undisputed. Likewise, no one has challenged the conclusion reached in the psychiatric evaluations, one of which was conducted at the request of the defendant.
 
 
 11
 Finally, we conclude that the specific upward departure was reasonable under the circumstances. The psychiatric evaluations indicated that intensive long-term psychotherapy would be necessary, although it must be conceded, as defendant points out, that neither psychiatrist specified an appropriate period of time. Nonetheless, the fact that neither the district court nor the psychiatrists could point with precision to how much time would be necessary to treat the defendant does not dictate a finding that the court's assessment was other than reasonable. More importantly, the court's conclusion that defendant is a continuing danger to society would in and of itself justify an upward departure. Whether the defendant can ever be cured or not is outside the expertise of the trial judge, but it is his call as to the nature of the threat to society represented by defendant.
 
 
 12
 We also note that 18 U.S.C. § 844(d), which defines the offense to which the defendant pled guilty, is drawn in a manner reflective of ascending degrees of seriousness. This section reads:
 
 
 13
 (d) Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned for not more than ten years, or fined not more than $10,000, or both; and if personal injury results to any person including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.
 
 
 14
 Obviously, it makes a difference whether the conduct of the defendant represented a threat to persons or property. Similarly, it makes a difference as to whether injury or death occurred. Although defendant's plan never came to fruition, it is an aggravating circumstance that the intention of the plan was to kill one person and kidnap another, and that arguably only a fortuitous circumstance kept this from occurring. Although the district judge did not specifically allude to this factor in pronouncing sentence, it is certainly a permissible makeweight in our decision to uphold the sentence.
 
 
 15
 AFFIRMED.